<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

EDMOND BENTON,

           Plaintiff,

v.

MARC SIMS, *et al.*,

           Defendants.

Civil Action No. 19-16157 (BRM)

**OPINION**

**MARTINOTTI, DISTRICT JUDGE**

    Petitioner Edmond Benton ("Petitioner") is a sexually violent predator ("SVP") civilly committed at the Special Treatment Unit at the Adult Diagnostic and Treatment Center in Avenel, New Jersey, pursuant to the New Jersey Sexually Violent Predator Act, N.J. Stat. § 30:4-27.24, et seq. ("SVPA"). He is proceeding *pro se* with a petition for a writ of habeas corpus ("Petition") brought pursuant to 28 U.S.C. § 2254. (ECF No. 1.) Respondents filed an answer (ECF No. 5) and Petitioner filed a traverse (ECF No. 6). For the reasons expressed below, Petitioner's habeas petition is **DENIED**, and a certificate of appealability shall not issue.

**I. BACKGROUND**

    Petitioner is currently civilly committed as an SVP pursuant to the SVPA. (*See* ECF No. 5-3.) The New Jersey Superior Court, Appellate Division, summarized the following background leading to Petitioner's commitment in its opinion affirming the trial court's remand decision:

> In 1992, E.B. pleaded guilty to second-degree sexual assault, N.J.S.A. 2C:14-2(c)(1). He was sentenced to an eight-year term of imprisonment, subject to a four-year period of parole ineligibility.

> In addition, he was sentenced to CSL and ordered to register under Megan's Law. E.B., slip op. at 1. During his plea colloquy, E.B. stated he, along with other men, participated in a gang attack upon a group of young girls at a public swimming pool. *Ibid.* E.B. admitted he vaginally penetrated one of the girls in the pool. *Id.* at 1-2. The victim was less than sixteen but older than thirteen years of age; E.B. was twenty-two years old at the time. *Id.* at 2.
>
> In 2002, E.B. pleaded guilty to second-degree sexual assault, N.J.S.A. 2C:14-2(b). It is not disputed E.B. fondled the breasts and buttocks of an eleven-year-old female and engaged in several sexually-explicit telephone conversations with her. *Ibid.* He was sentenced to a ten-year term at the Adult Diagnostic and Treatment Center (ADTC), subject to a five-year period of parole ineligibility. *Ibid.* At the time of his sentence, he had been convicted of ten indictable offenses, including guilty pleas to the two sexual offenses. *Ibid.*
>
> In 2008, upon E.B.'s release from the ADTC, two psychologists stated, in an ADTC "Termination Report," that E.B. understood his deviant arousal pattern and offending dynamics, and had developed coping mechanisms to deal with high risk situations. An addendum to the "Termination Report" stated that although objective testing 'suggests a high risk for sexual re-offense[,] [f]rom a clinical perspective[,] his overall risk of sexual re-offense appears to be substantially reduced by [his] significant treatment gains," and a "strong support system" provided by his family. *Id.* at 2-3. Nevertheless, the psychologists recommended that upon his discharge E.B. "avoid children and relationships with women who have children."
>
> In 2011, E.B. pleaded guilty to using marijuana, in violation of CSL, and the court sentenced him to a nine-month prison term. The record also demonstrates a number of other non-sexual crimes committed by E.B. over the years, mostly drug-related. As noted, in July 2014, E.B. pleaded guilty to the CSL violations, which included initiating contact with an underage female, leading to an eighteen-month prison term.

(ECF No. 5-26 at 4–6.) The Appellate Division summarized the July 2014 CSL violation as follows:

> On July 14, 2014, E.B. pleaded guilty to Community Supervision for Life (CSL) violations, which included initiating contact with a fourteen-year-old girl, missing required treatment sessions, and

2

> failure to notify police of an address change. The record reveals the minor reported that E.B. called out to her, stating, "Yo little girl, come here, come here." The minor stated E.B. followed her, making her feel nervous and scared; when she eventually turned around, he was gone. E.B. received an eighteen-month sentence for these violations.

(*Id.* at 3–4.)

Prior to Petitioner's release from his eighteen-month sentence, the Attorney General petitioned to have him committed pursuant to SVPA. (ECF No. 5-3.) Petitioner's initial civil commitment hearing was conducted on January 14, 2016. (ECF No. 5-6.) The trial court issued an oral decision civilly committing Petitioner under the SVPA on January 16, 2016. (*See* ECF No. 5-7.)

Petitioner filed a direct appeal to the New Jersey Superior Court, Appellate Division (ECF Nos. 5-8, 5-9, 5-10, 5-11.) On November 17, 2017, the Appellate Division remanded Petitioner's civil commitment back to the trial court for a new hearing. (*See* ECF No. 5-12.)

On December 14, 2017, the trial court conducted a case management conference. (ECF No. 5-13.) At that conference, the trial court adjourned the new hearing due to the court's calendar and found that because the case was on remand, it was not subject to the requirement that a hearing be held within twenty days from the date of a temporary commitment order under at N.J.S.A. 30:4-27.29. (*See id.*) Petitioner filed a motion to dismiss the State's petition for his civil commitment, alleging the court's inability to conduct the remand hearing within twenty days of the Appellate Division's decision violated N.J.S.A. 30:4-29.29(a). (ECF No. 5-14.) The trial court denied Petitioner's motion to dismiss. (*See* ECF No. 5-1 at 10.)[1]

---

[1] Respondents have failed to provide the Court with documentation regarding the trial court's denial of Petitioner's motion to dismiss. However, Petitioner does not dispute the motion was denied, and the trial court proceeded with the new hearing.

On January 22 and 29, 2018, the trial court conducted a new civil commitment hearing. (*See* ECF Nos. 5-16, 5-17.) On April 3, 2018, the trial court ordered Petitioner be civilly committed under the SVPA. (*See* ECF No. 5-20.) Petitioner filed a direct appeal. (ECF Nos. 5-21, 5-22, 5-23, 5-24, 5-25.) On March 26, 2019, the Appellate Division affirmed the order continuing Petitioner's commitment. (*See* ECF No. 5-26.) Petitioner filed a petition for certification with the New Jersey Supreme Court, which was subsequently denied on May 28, 2019. (*See* ECF Nos. 5-27, 5-28, 5-30.)

On July 23, 2019, Petitioner filed the instant habeas Petition, raising the following claims:

> (1) Petitioner [] has been denied due process, by delaying what the State agreed was his "initial hearing," the protections built into the New Jersey SVP[A] were denied him, in violation of his right to due process;
>
> (2) At [Petitioner's] [re]hearing the trial court ignored the Appellate Court's mandated and committed [Petitioner] on the evidence [the Appellate Division] found incompetent;
>
> (3) The Court must reverse [Petitioner's] commitment order since the order was based on inadmissible and unreliable hearsay; and
>
> (4) The States experts' testimony lacked an empirical basis and constituted inadmissible net opinion.

(ECF No. 1 at 11-21.) Respondents filed an answer (ECF No. 5), and Petitioner filed a traverse (ECF No. 6.)

## II. LEGAL STANDARD

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254 provides, the district court "shall entertain an application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Habeas petitioners bear the burden of establishing their entitlement to relief for each claim presented in a

petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013). District courts are required to give great deference to the determinations of state trial and appellate courts. *Renico v. Lett*, 559 U.S. 766, 772–73 (2010).

Where a claim has been adjudicated on the merits in state court, the district court shall not grant an application for writ of habeas corpus unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States: or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"A state court decision is 'contrary to' clearly established federal law if it 'applies a rule that contradicts the governing law set forth' in Supreme Court precedent, . . . or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives ar a result different' from that reached by the Supreme Court." *Eley*, 712 F.3d at 846 (*citing Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). Federal law is clearly established for these purposes where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court. *See Woods v. Donald*, 575 U.S. 312, 316 (2015). An application of clearly established federal law is unreasonable if it is an "objectively unreasonable" application of law, not merely an erroneous application. *See Eley*, 712 F.3d at 846 (*quoting Renico*, 559 U.S. at 773). As to 28 U.S.C. § 2254(d)(1), a federal court must confine its examination to evidence in the record. *See Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011).

"When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be

5

no reasonable dispute that they were wrong." *Woods*, 575 U.S. at 316. Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Furthermore, "[w]hen a state court arrives at a factual finding based on credibility determinations, the habeas court must determine whether that credibility determination was unreasonable." *See Keith v. Pennsylvania*, 484 F. App'x 694, 697 (3d Cir. 2012) (citing *Rice v. Collins*, 546 U.S. 333, 339 (2006)).

### III. DECISION

The New Jersey Sexually Violent Predator Act provides for the civil commitment of individuals convicted of a sexually violent offense who qualify as "sexually violent predators." N.J.S.A. 30:4–27.26.4 The SVPA defines a sexually violent predator as a:

> person who has been convicted, adjudicated delinquent or found not guilty by reason of insanity for commission of a sexually violent offense, or has been charged with a sexually violent offense but found to be incompetent to stand trial, and suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment.

N.J.S.A. 30:4–27.26(b).

When it appears a person may meet the criteria of an SVP, an "agency with jurisdiction" provides "written notice to the Attorney General 90 days, or as soon as practicable" before the anticipated release of the individual. N.J.S.A. 30:4–27.26, 30:4–27.27(a)(1). Should the Attorney General determine that public safety requires the involuntary civil commitment of an SVP, the Attorney General may initiate a court proceeding and present to a judge for immediate review the certification of two doctors, one of whom must be a psychiatrist, who have examined the person

no more than three days before the petition for commitment. *See* N.J.S.A. 30:4–27.28; 30:4-27.26. The court then conducts a temporary commitment hearing and determines if probable cause exists to believe the person in an SVP. N.J.S.A. 30:4-27.28(f). If the court finds probable cause, it issues an order authorizing temporary commitment to a secure facility, pending a final hearing. *Id.* The SVPA mandates the individual under a temporary commitment order shall not be released from confinement before the final hearing, which will be scheduled within twenty (20) days after the initial hearing. N.J.S.A. 30:4–27.28(f), 30:4–27.29(a).

### A. Ground One: Procedural Due Process

Petitioner asserts he was denied due process when the trial court did not hold Petitioner's remand hearing within twenty-days of the date the Appellate Division remanded the matter. (*See* ECF No. 1 at 11.) The Court construes Petitioner's claim as arguing that trial court was required to hold his remanded civil commitment hearing within twenty-days pursuant to N.J.S.A. 30:4-27.29. Plaintiff asserts that his new hearing was not held until January 22, 2018, just over two months after the Appellate Division remanded the matter, and there was no showing of "exceptional circumstances" warranting the extension of the twenty-day requirement. (ECF No. 1 at 11.)

The Supreme Court recognizes that commitment to a mental hospital produces "a massive curtailment of liberty," *Humphrey v. Cady*, 405 U.S. 504, 509 (1972), that "requires due process protection," *Addington v. Texas*, 441 U.S. 418, 425 (1979); *O'Connor v. Donaldson*, 422 U.S. 563, 580 (1975) (Burger, C.J., concurring) (citations omitted). "'Due process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place, and circumstances." *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895 (1961). "Due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S.

471, 481 (1972). In New Jersey, "[a] person who is involuntarily committed . . . shall receive a court hearing with respect to the issue of continuing need for involuntary commitment as a sexually violent predator within 20 days from the date of the temporary commitment order." N.J.S.A. 30:4–27.29(a).

Petitioner raised this issue on direct appeal to the Appellate Division, which subsequently denied the claim finding it was "without sufficient merit to warrant discussion in a written opinion." (ECF No. 5-26 at 17, citing R. 2:11-3(e)(1)(E).) The Appellate Division remanded Petitioner's civil commitment back to the trial court for a new hearing on November 17, 2017. On December 14, 2017, the trial court conducted a case management conference. (ECF No. 5-13.) At that conference, the trial court adjourned the new hearing due to (1) the court's calendar and (2) a finding that because the case was a remand, it was not subject to the requirement that a hearing be held within twenty days from the date of a temporary commitment order under at N.J.S.A. 30:4-27.29. (*See id.*) The trial court stated on the record that a brief adjournment of the hearing was necessary because the court's calendar was full. (ECF No. 5-13.) The trial court also noted that the twenty-day rule did not apply, as the case was before it on remand and not for an initial hearing. (*Id.*) The hearing was then further delayed because the court had to consider Petitioner's motion to dismiss the State's petition for his civil commitment.

N.J.S.A. 30:4–27.29(a) requires Petitioner be provided a hearing within 20 days from the date of the temporary commitment order. Petitioner is not arguing the trial court failed to give him his initial commitment hearing within the time proscribed. Rather, he is arguing that on remand from the Appellate Division, the trial court failed to give him a rehearing with in twenty days. N.J.S.A 20:4-27.29(a) addresses the time requirements for a hearing following the issuance of a temporary commitment order. Here, the Appellate Division remanded the matter to the trial court

8

for rehearing and did not instruct that the hearing had to take place in any specific amount of time. (*See* ECF No. 5-12.) The trial court found that the 20-day requirement did not apply on Petitioner's remand. The Appellate Division found no merit to Petitioner's claim.

Petitioner fails to provide case law or authority to support his argument that he has a due process right to a civil commitment hearing within 20 days of the Appellate Division remanding his case for rehearing. *See Price v. Vincent*, 538 U.S. 634, 641 (2003) (explaining that a habeas petitioner bears the burden of establishing his entitlement to relief). Because Petitioner has failed to supply any Supreme Court case that calls into question the court's finding that it was not required to hold Petitioner's rehearing within 20-days of the remand of his case, Petitioner fails to demonstrate that his constitutional rights have been violated. Therefore, Petitioner's claim for habeas relief must be denied.

**B. Ground Two: Reliance on Expert Testimony**

Petitioner's second ground for habeas relief asserts the trial court erred in relying on the same evidence that the Appellate Division found "incompetent" on remand. (ECF No. 1 at 15.) Petitioner argues that the Appellate Division found the evidence the trial court originally relied upon were "unproven allegations" used as "significant building blocks in both experts opinions" and on remand the trial court once again relied upon those "unproven allegations" in reaching its conclusion. (*Id.*) The Appellate Division found this claim meritless.

On Petitioner's direct appeal from the trial court's initial decision to commit him, the Appellate Division remanded for a new hearing, finding:

> Here, the record demonstrates unproven allegations[2] served as "significant building blocks" in both experts' opinions. Specifically,

---

[2] The Appellate Division summarized the unproven allegations as follows:
In 2015, the State filed a petition seeking to have E.B. involuntarily committed under the SVPA because various police reports indicated

9

> their opinions finding E.B. had antisocial personality disorder and a present propensity to commit acts of sexual violence if not committed to the STU were based on unproven allegations of E.B.'s contact with teenage girls after his discharge from the ADTC. Both accorded considerable weight to the victims' allegations despite the absence of evidence verifying such claims, with the exception of the one in which E.B. admitted calling out to a girl on a sidewalk in the manner described above. As to this one proven allegation, there is no evidence the experts believed E.B.'s conduct on this one occasion was sufficient to conclude he was highly likely to reoffend.

(ECF No. 5-12 at 14.) The trial court conducted a new civil commitment hearing on January 22 and 29, 2019. (*See* ECF Nos. 5-16, 5-17.) At the hearing, the State presented testimony from psychiatrist Roger Harris, M.D., and psychologist Laura Carmignani, Psy.D. (*See id.*) The Appellate Division summarized Dr. Harris' and Dr. Carmignani's testimony as follows:

> Dr. Roger Harris, a psychiatrist, [] interviewed E.B. on two occasions in 2015. From these examinations, along with his review of E.B.'s criminal and treatment records, Dr. Harris diagnosed E.B. with other specified paraphilic disorder, or hebephilia, "to describe [E.B.'s] arousal to teenage girls, who are under[]age," and antisocial personality disorder.
>
> Dr. Harris testified that the combination of E.B.'s two disorders "increases the[] risk to sexually reoffend:; that E.B. "is at a high risk to reoffend if placed in a less restrictive setting than the STU"; that E.B. "has demonstrated a volitional deficit in being able to control his sexual arousal to underage teenage girls"; and that E.B. has "demonstrated a failure to conform to social norms." According to Dr. Harris, E.B.'s score of six on the Static-99 test places him well above [the] average risk to sexually reoffend."

---

E.B. contacted or attempted to have contact with eight adolescent girls from October 2009 to April 2014. According to these reports, the alleged victims told the police E.B. followed or approached them as they walked down the street, and attempted to engage them in conversation. He posed questions to some victims, which included asking their name, age, telephone number, whether the girl was a virgin, engaged in oral sex, or would have sex with him. Some complained he drove up to and cut off their path in order to speak to them.

(ECF No. 5-12 at 5.)

10

>Dr. Laura Carmignani, a psychologist, completed a forensic evaluation of E.B. in January 2018. She diagnosed E.B. with other specified paraphilic disorder (hebephiliac); other specified personality disorder with antisocial traits; and cannabis use disorder. Like Dr. Harris, Dr. Carmignani found E.B. scored a six on the Static-99 test, which she "then considered with the aggravating influence of his history of noncompliance under community supervision[,] indicat[ing] that his overall risk to sexually recidivate falls within the 'highly likely' threshold." She also scored E.B. "within the [h]igh range on the STABLE-2007," which "was developed to assess change in intermediate term risk status, assessment needs, and help predict recidivism in sexual offenders." E.B "also fell within the [h]igh range on the PCL-R, a measure of psychopathic personality traits." Ultimately, Dr. Carmignani opined, "within a reasonable degree of psychological certainty," that E.B. "presents as a high risk and is highly likely to engage in future acts of deviant sexual behavior as defined by the SVP statute if released into the community at this time."
>
>Dr. Harris and Dr. Carmignani noted the unproven allegations of E.B.'s contact with underage females in their reports and testimonies; however, they each minimized their use of the information in reaching their conclusions. When Dr. Harris was asked if he used the unproven allegations as a "significant or substantial building block to form [his] diagnosis of antisocial personality disorder," Dr. Harris responded, "No." When asked if he was "to ignore the CSL violations[,] would [he] still diagnose antisocial personality disorder," Dr. Harris testified, "Yes." Finally, he stated that he did not "weigh" the unproven allegations "heavily," as "his two offenses are a clear indication, his approaching the [eleven]-year-old and his 199[2] offense are sufficient." Regarding the charges against E.B. that were dismissed, Dr. Carmignani testified, "I understand that the charges were dismissed and they were not pursued legally. I consider them, but they are not significant building blocks to . . . my overall opinion and . . . evaluation." Dr. Carmignani testified that her opinion that E.B. is highly likely to reoffend would not change if the dismissed charges "did not exist at all."

(ECF No. 5-26 at 6–9.) The Appellate Division explained that the trial judge concluded that the State had shown by clear and convincing evidence that Petitioner "continues to suffer mental abnormality, personality disorder," "other specified personality disorder," and "hebephilia,

11

attracted to teenage girls." (*Id.* at 9.) The trial judge also found "clear and convincing evidence that presently [Petitioner is] highly likely to sexually reoffend." (*Id.*)

The Appellate Division did not unreasonably apply any clearly establish federal law in rejecting Petitioner's claim. Petitioner's argument that the trial court erred on remand in committing him based on expert reports that inappropriately relied upon "unproven allegations" as "significant building blocks" in their opinions is incorrect. As explained above, the experts explicitly stated on the record that they did not rely heavily on the unproven allegations and that their opinions remained the same if the unproven allegations did not exist at all. (ECF No. 5-26 at 6–9.) The experts considered their interviews of Petitioner and his criminal and treatment records. (*Id.*) As their opinions did not rely on the "unproven allegations," the trial court did not err in basing Petitioner's civil commitment on those opinions. Thus, to the extent Petitioner claims that the trial court erred in relying on the expert opinions, that claim is denied.

**C. Ground Three: Expert Use of Hearsay**

In ground three, Petitioner argues that the trial court erred in relying on inadmissible and unreliable hearsay. (ECF No. 1 at 17.) Petitioner argues that the trial court relied upon "hearsay allegations that the two state doctors assumed to be true. (*Id.*)

Though Petitioner himself has not elaborated on the specific hearsay allegations he is referring to, on direct appeal the Appellate Division noted that Petitioner pointed to "portions of the record where the State's experts were questioned on the CSL violations, police reports, and allegations against Petitioner that were dismissed and never substantiated." (ECF no. 5-26 at 10.) The Appellate Division reviewed Petitioner's claim and found it meritless. (ECF No. 5-26 at 10–14.) The Appellate Division provided the following analysis:

Courts may order the involuntary civil commitment of a person under the SVPA when the "State has proven 'by clear and convincing evidence that the person needs continued involuntary commitment as a sexually violent predator.'" *In re Civil Commitment of J.P.*, 393 N.J. Super. 7, 11 (App. Div. 2007) (quoting N.J.S.A. 30:4-27.32(a)). A "sexually violent predator" is

> a person who has been convicted . . . for commission of a sexually violent offense . . . and suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment.
>
> [N.J.S.A. 30:4-27.26.]

To prove that commitment is necessary, the State must establish that "the individual has serious difficulty in controlling sexually harmful behavior such that it is highly likely that he or she will not control his or her sexually violent behavior and will reoffend." *In re Civil Commitment of W.Z.*, 173 N.J. 109, 132 (2002).

In evaluating the evidence, "a trial court's evidentiary rulings are 'entitled to deference absent a showing of an abuse of discretion . . . .'" *State v. Brown*, 170 N.J. 138, 147 (2001) (quoting *State v. Marrero*, 148 N.J. 469, 484 (1997)). "[A]n appellate court should not substitute its own judgment for that of the trial court, unless 'the trial court's ruling was so wide of the mark that a manifest denial of justice resulted.'" *Ibid.* (quoting *Marrero*, 148 N.J. at 484) (internal quotations omitted).

In commitment hearings, "official reports, including police reports, [may be] properly considered and used by the court as relevant background information and [may be] properly considered by . . . experts, although the included hearsay may not be admitted as substantive information." *In re Civil Commitment of J.M.B.*, 395 N.J. Super. 69, 94-95 (App. Div.), aff'd, 197 N.J. 563 (2007). "[S]ignificant state action, such as SVPA commitment, cannot and should not be based on unproven allegations of misconduct," particularly those not subject to cross-examination. *In re Civil Commitment of A.E.F.*, 377 N.J. Super. 473, 490 (App. Div. 2005).

Here, E.B. cites to portions of the record where the State's experts were questioned about the CSL violations, police reports, and allegations against E.B. that were dismissed and never substantiated. E.B.'s counsel objected on the basis of inadmissible hearsay, and the

13

> trial judge overruled the objections, thereby allowing the experts to discuss the allegations. However, the introduction of this evidence did nothing more than relate E.B.'s history and background, as both experts testified that they did not consider the evidence as significant building blocks, and they would have reached the same conclusions if the evidence did not exist. Thus, the experts' opinions in the second trial did not suffer from the same deficiencies as the experts' opinions in the first trial. Instead, the experts here properly focused their opinions on E.B.'s current condition, based upon admissible evidence.
>
> E.B. also argues that his statement from his 2014 conviction, "Yo, little girl, come here," was a hearsay statement assumed as true by both experts, and that both experts assumed the offense was sexual in nature. E.B. pleaded guilty to initiating contact with a minor, in violation of CSL, and served eighteen months for the crime. He also admitted guilt of this offense to both of the experts who interviewed him before his first commitment hearing, each time stating he was abusing drugs and alcohol at the time. Our Supreme Court also noted that such statements can properly be admitted as statements of a party for the purpose of assessing whether the conduct "constituted a sexually violent offense substantially equivalent to the conduct encompassed in" the listed offenses under N.J.S.A. 30:4-27.26(a). *J.M.B.*, 197 N.J. at 597 n.9.
>
> "The judges who hear SVPA cases generally are 'specialists' and 'their expertise in the subject' is entitled to 'special deference.'" *In re Civil Commitment of R.F.*, 217 N.J. 152, 173-74 (2014) (quoting *In re Civil Commitment of T.J.N.*, 390 N.J. Super. 218, 226 (App. Div. 2007)). We find there is substantial and credible evidence in the record for the judge to have concluded the 2014 incident demonstrated E.B.'s deviant arousal, and that special deference should be accorded as to this part of the holding.

(*Id.*)

To the extent Petitioner contends that the admission of hearsay violates his due process rights, "the Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules." *Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983). "A federal habeas court . . . cannot decide whether the evidence in question was properly allowed under the state law of evidence." *Keller v. Larkins*, 251 F.3d 408, 416 n. 2 (3d Cir. 2001).

"Although New Jersey courts have held that the Due Process Clause limits the use of hearsay in sexually violent predator commitment hearings, this Court is not aware of any Supreme Court case clearly establishing that the admission of hearsay in a sexually violent predator commitment hearing constitutes a violation of due process[.]" *Baldwin v. Rogers*, Civ. No. 07-1741 (PGS), 2009 WL 1228432, at *7 (D.N.J. May 1, 2009).

To the extent Petitioner asserts that the admission of hearsay violated his rights under the Confrontation Clause, that claim does not warrant habeas relief. The Confrontation Clause provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. Courts in this District have held that the Sixth Amendment right of confrontation, and its attendant limitations on the use of hearsay evidence, does not attach to civil proceedings such as the civil commitment proceedings under the SVPA. *See Greenfield v. Dep't of Corrections*, Civ. A. No. 09-1969, 2011 WL 3203730, at *14; *see also Talbert v. Goodwin*, Civ. A. No. 07–4101, 2009 WL 223710 (D.N.J. Jan. 29, 2009); *Baldwin v. Rogers*, Civ. No. 07-1741, 2009 WL 1228432, at *7 (D.N.J. May 1, 2009). Nor does any Supreme Court case hold that the Due Process Clause prohibits the use of hearsay testimony in civil commitment proceedings. *See Baldwin*, 2009 WL 1228432, at *7 ([T]his Court is not aware of any Supreme Court case clearly establishing that the admission of hearsay in a sexually violent predator commitment hearing constitutes a violation of due process); *see also Carty v. Nelson*, 426 F.3d 1064, 1073 (9th Cir. 2005); *In re Civil Commitment of T.J.N.*, 390 N.J. Super. 218, 225 (App. Div. 2007).

The Appellate Division did not unreasonably apply federal law in finding Petitioner's hearsay claim meritless. Therefore, Petitioner's third ground for habeas relief is denied.

**D. Ground Four: Empirical Data and Net Opinion**

Petitioner's fourth and final ground for habeas relief, alleges that the State experts' testimony lacked an empirical basis and constituted inadmissible net opinion. (ECF No. 1 at 21.)

Petitioner raised this claim before the state court and the Appellate Division found it meritless. The Appellate Division explained the follows:

> In another civil commitment case, we recently discussed the admissibility of expert opinions:
>
>> "An expert may not provide an opinion at trial that constitutes 'mere net opinion.'" *Davis v. Brickman Landscaping, Ltd.*, 219 N.J. 395, 410 (2014) (quoting *Pomerantz Paper Corp. v. New Cmty. Corp.*, 207 N.J. 344, 372 (2011)). The net opinion rule bars admission "of an expert's conclusions that are not supported by factual evidence or other data." [*Townsend v. Pierre*, 221 N.J. 36, 53-54 (2015)] (quoting *Polzo v. Cty. Of Essex*, 196 N.J. 569, 583 (2008)). The expert must provide the factual basis and analysis that support the opinion, rather than stating a mere conclusion. *Davis*, 219 N.J. at 410. Courts "may not rely on expert testimony that lacks an appropriate factual foundation and fails to establish the existence of any standard about which the expert testified." *Ibid.* (quoting *Pomerantz Paper*, 207 N.J. at 373).
>>
>> The net opinion rule does not require experts to organize or support their opinions in a specific manner "that opposing counsel deems preferable." *Townsend*, 221 N.J. at 54. Consequently, "[a]n expert's proposed testimony should not be excluded merely 'because it fails to account for some particular condition or fact which the adversary considers relevant.'" *Ibid.* (quoting *Creanga v. Jardal*, 185 N.J. 345, 360 (2005)). An expert's failure "to give weight to a factor thought important by an adverse party does not reduce his testimony to an inadmissible net opinion if he otherwise offers sufficient reasons which logically support his opinion." *Ibid.* (quoting *Rosenberg v. Tavorath*, 352 N.J. Super. 385, 402 (App. Div. 2002)). Instead, such omissions may be subjected to exploration and searching cross-examination at trial. *Id.* at 54-55.

16

> Even so, the net opinion doctrine requires experts to "be able to identify the factual bases for their conclusions, explain their methodology, and demonstrate that both the factual bases and the methodology are [scientifically] reliable." *Id.* at 55 (quoting *Landrigan v. Celotex Corp.*, 127 N.J. 404, 417 (1992)).
>
> In [*In re Accutane Litig.*, 234 N.J. 340 (2018)], the Supreme Court explained trial courts perform their "gatekeeping role" to assure reliability of expert scientific testimony by requiring experts "to demonstrate" they applied "scientifically recognized methodology in the way that others in the field practice the methodology." *Id.* at 399-400. Thus, when "a proponent does not demonstrate the soundness of a methodology, both in terms of its approach to reasoning and to its use of data, from the perspective of others within the relevant scientific community, the gatekeeper should exclude the proposed expert testimony on the basis that it is unreliable." *Id.* at 400.
>
> [*In re Civil Commitment of A.Y.*, ___ N.J. Super. ___ (App. Div. 2019) (slip op. at 26-28).]

Here, E.B. contends the State's experts failed to present evidence that he had at least a fifty-one percent chance of reoffending. He points to Dr. Harris' assessment that E.B.'s score of six on the Static-99 test amounts to a 25.7 percent recidivism rate. However, our Supreme Court refused to impose a technical meaning or quantitative threshold in establishing a lack of control; rather it held that "the State must prove by clear and convincing evidence . . . it is highly likely that the person will not control his or her sexually violent behavior and will reoffend." *W.Z.*, 173 N.J. at 133-34. E.B. provides no legal support for his argument that we should interpret "highly likely" to mean "clearly more than just a [fifty-one percent] risk."

Moreover, E.B. ignores the fact that both of the State's experts interviewed E.B. extensively and relied on prior evaluations, treatment records, a thorough review of E.B.'s past, and actuarial instruments that are "generally accepted by professionals who assess sex offenders for risks of re[-]offense." *In re Commitment of R.S.*, 339 N.J. Super. 507, 538 (App. Div. 2001); *see also In re R.S.*, 173


> N.J. 134, 137 (2002) ("[A]ctuarial risk assessment instruments may be admissible in evidence in a civil commitment proceeding under the SVPA when such tools are used in the formation of the basis for a testifying expert's opinion concerning the future dangerousness of a sex offender."). The State's experts provided the factual bases for their conclusions and explained the methodologies they employed. The State's experts therefore satisfied the requirements imposed by the Court in *Accutane*, and the trial court did not abuse its discretion in admitting and considering the testimony of Dr. Harris and Dr. Carmignani.

(ECF No. 5-26 at 14–17.)

Petitioner is again essentially challenging the trial court's admission of the experts' opinions. As explained above, the Due Process Clause does not allow the federal courts "to engage in a finely-tuned review of the wisdom of state evidentiary rules." *Marshall*, 459 U.S. at 438 n.6. Generally, the admissibility of evidence is a question of state law and not cognizable in federal habeas review. *Keller*, 251 F.3d 416 n.2. Because habeas relief is only available to remedy violations of federal law and does not provide an avenue for relief based on alleged errors of state law, a habeas petitioner may raise a habeas claim based on a state law evidentiary issue only where he can show that the admission of the evidence in question denied him Due Process under the Fourteenth Amendment by depriving him of the "fundamental elements of fairness in [his] criminal trial." *Glenn v. Wynder*, 743 F.3d 402, 407 (3d Cir. 2014) (quoting *Riggins v. Nevada*, 504 U.S. 127, 149 (1992) (Thomas, J. dissenting)). "The Supreme Court has 'defined the category of infractions that violate 'fundamental fairness' very narrowly, based on the recognition that, beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation.'" *Id.* (quoting *Medina v. California*, 505 U.S. 437, 443 (1992)). "In order to satisfy due process, [Petitioner's] trial must have been fair; it need not have been perfect." *Id.* (citing *United States v. Hasting*, 461 U.S. 499, 508 (1983)). Thus, a Due Process violation will only occur in the context of a state court evidentiary ruling when that ruling was "so arbitrary or

18

prejudicial that it rendered the trial fundamentally unfair." *Scott v. Bartkowski*, Civ. No. 11-3365, 2013 WL 4537651, at *9 (D.N.J. Aug. 27, 2013) (citing *Romano v. Oklahoma*, 512 U.S. 1, 12–13 (1994)).

Petitioner argues the experts' opinions were inadmissible as "net opinion" and they lacked an empirical basis. As the Appellate Division explained in affirming Petitioner's civil commitment, an expert in New Jersey state court must explain the basis for his opinion and provide "the factual basis and analysis that support the opinion." (*See* ECF No. 5-26 at 14 (citing *Davis*, 219 N.J. at 410.)) Here, the experts relied upon interviews of Petitioner, prior evaluations of Petitioner, treatment records, and reviewed Petitioner's past, in crafting their opinions. The experts also relied on actuarial instruments, which are "generally accepted by professionals who assess sex offenders for risks of re[-]offense" in the New Jersey state courts. (*See id.* (citing *In re Commitment of R.S.*, 339 N.J. Super. 507, 538 (App. Div. 2001).)

Petitioner appears to simply disagree with the state court evidentiary rules, which is a matter of state law not subject to federal habeas review unless he was denied fundamental fairness at trial. The record does not support a finding that Petitioner was denied due process or fundamental fairness. Thus, Petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the state court determinations have "resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." Nor has petitioner demonstrated that the state court rulings "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Accordingly, ground four concerning the admission of evidence is denied.

**IV. CERTIFICATE OF APPEALABILITY**

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citation omitted).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right.  Thus, no certificate of appealability shall issue.

V. CONCLUSION

For the above reasons, the § 2254 habeas petition is denied, and a certificate of appealability will not issue.  An appropriate Order follows.

Dated: July 26, 2022

*/s/ Brian R. Martinotti*
HON. BRIAN R. MARTINOTTI
UNITED STATES DISTRICT JUDGE